UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | |
|---|---|
| I.A.R.C. INC. d/b/a INTO ACTION RECOVERY CENTERS INC.,<br><br>       Plaintiff,<br><br>   -against-<br><br>MEDUSIND INC., AVA BILLING AND CONSULTING, LLC, and ASHTON ABERNETHY,<br><br>       Defendants. | Civil Action No. 4:25-cv-04638 |

---

**DEFENDANTS' PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

---

                Respectfully submitted,

                WILSON, ELSER, MOSKOWITZ,
                EDELMAN & DICKER, LLP
                909 Fannin Street, Suite 3300
                Houston, Texas 77010
                Tel. (713) 353-2000
                Fax (713) 785-7780

                **ATTORNEYS FOR DEFENDANTS**

Defendants Medusind, Inc., AVA Billing and Consulting, LLC, and Ashton Abernethy (collectively "Defendants"), by their attorneys, respectfully submit this Partial Motion to Dismiss the Complaint (Dkt. No. 1) ("Complaint") filed by Plaintiff I.A.R.C. INC., pursuant to FED. R. CIV. P. 12(b)(6).

## PRELIMINARY STATEMENT

This lawsuit is, at bottom, a contract dispute about billing and revenue-cycle services. Plaintiff alleges that Defendants failed to timely and properly perform, causing purely economic losses measured by unpaid insurance claims and cash-flow disruptions. Under Texas law, where the gravamen of the complaint is nonperformance of contractual obligations and the only alleged injury is economic loss to the subject of the contract, the plaintiff's sole remedy lies in contract, not tort or statutory consumer claims. *See, e.g., Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235–36 (Tex. 2014); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418–19 (Tex. 2011).

Plaintiff's fraud, negligent misrepresentation, Deceptive Trade Practices Act (DTPA), breach of express warranty (as a freestanding noncontract claim), and breach of fiduciary duty counts impermissibly duplicate the contract theory. The tort and DTPA claims recast alleged nonperformance and staffing decisions as "misrepresentations" or "concealment," and seek the same economic damages as the contract claim. They are barred by the independent-injury/economic-loss rule and otherwise fail on their own elements: the alleged statements are nonactionable opinion or puffery, promises of future performance without adequately pleaded present intent not to perform, or omissions with no alleged duty to disclose; any reliance was not justifiable as a matter of law; and the fraud-sounding claims are not pleaded with Rule 9(b)

1

particularity. Moreover, the "express warranty for services" count adds nothing that contract law does not already address and should be dismissed as duplicative and, in any event, is inadequately pleaded. Further, the fiduciary-duty claim fails because no formal or informal fiduciary relationship is alleged beyond an arm's-length services engagement and because Plaintiff seeks contract-type damages for alleged nonperformance.

Respectfully, the Court should dismiss with prejudice the claims for fraud, negligent misrepresentation, breach of express warranty (as a standalone tort/noncontract claim), DTPA, and breach of fiduciary duty (Counts A-E), leaving Plaintiff to pursue its contract claim alone, if at all.

## FACTUAL BACKGROUND[1]

Plaintiff I.A.R.C. Inc. ("IARC" or "Plaintiff") is a Texas behavioral healthcare provider and has been in business for more than fifteen years, operating multiple addiction treatment facilities. (Compl. ¶¶ 2, 11). The majority of IARC's patients have insurance coverage. (Compl. ¶ 12.) These patients assign their benefits to IARC, which relies on insurance billings and collections to fund its operations. (Compl. ¶ 12.) IARC has historically outsourced its billing and collection functions to third-party service providers, who are responsible for submitting claims, correcting deficiencies, pursuing denials and appeals, and obtaining prior authorizations. (Compl. ¶ 13.) All of these functions must be performed timely and correctly to avoid nonpayment and cashflow disruption. (Compl. ¶¶ 14–15.)

In February 2021, IARC and non-party Lightning Step Technologies, LLC ("LST") executed a Billing Services Agreement that included an anti-assignment clause prohibiting

---

[1] Defendants vehemently dispute many of Plaintiff's factual and legal assertions in the Complaint. For the purposes of this motion, however, Defendants will, as they must, "take[ ] as true" all "[w]ell-pleaded factual allegations" in the Amended Complaint. *In re BP P.L.C.*, 852 F. Supp. 2d 767, 787 (S.D. Tex. 2012).

assignment without both parties' written consent, rendering any noncompliant assignment void. (Compl. ¶¶ 16–17.) Around April 2021, LST's affiliate, defendant AVA Billing, began providing billing and collection services to IARC. (Compl. ¶ 18.) IARC authorized AVA Billing to act on its behalf, including utilization management and prior authorization, and allegedly retained the right to direct and control AVA Billing's activities. (Compl. ¶ 18.) IARC alleges that it never provided written consent to any purported assignment of the Billing Services Agreement to AVA Billing. (Compl. ¶ 19.) Then, in 2023, Medusind acquired AVA Billing, and services for IARC were transitioned to Medusind. (Compl. ¶ 20.)

IARC alleges that Defendants subsequently made numerous misrepresentations and concealed material information. (Compl. ¶ 21.) The first instance allegedly occurred on June 26, 2023, when Ashton Abernethy, Medusind's Vice President of Sales and a former founder and co-owner of AVA Billing, met with IARC's CEO and CFO at IARC's Houston office. (Compl. ¶¶ 5, 6, 8, 22.) IARC alleges that during this meeting, Abernethy represented: (1) that Medusind provided and would provide IARC with superior billing services; (2) that Medusind achieved and would achieve higher collections and greater efficiencies due to its larger market presence and insurer relationships; (3) that day-to-day functions would not change and the same account managers and staff would remain on IARC's account; (4) that neither AVA Billing nor Medusind had ever lost any clients; and (5) that she would provide a proposed written contract to formalize the oral agreements. (Compl. ¶ 22(a)–(e).) [2]

---

[2] The parties dispute whether the relationship is governed by an oral or written contract. Defendants maintain that Plaintiff's original written contract with LST, effective February 1, 2021, remains operative. *See* Compl. ¶ 16. The contract was assignable by LST to AVA Billing, as AVA Billing was majority owned by LST. *Id.* ¶ 17. Medusind acquired AVA Billing via a stock purchase, and AVA Billing remained intact as the service provider.

3

IARC claims it relied on these representations in deciding to proceed with Medusind, authorizing Medusind to act on its behalf (including utilization management services), and retained the right to direct and control Medusind's billing activities. (Compl. ¶¶ 23–26.) IARC alleges it never provided written consent to an assignment of the Billing Services Agreement to Medusind. (Compl. ¶ 27.)

Separately, IARC alleges that Medusind represented on its website and in marketing materials that its expertise and client-focused service improve efficiency and profitability, that client satisfaction is a primary focus, and that Medusind "ensures every dollar earned reaches the client's bottom line." (Compl. ¶ 28(a)–(c).) IARC also quotes Medusind's "Behavioral Health" materials describing a detailed procedure to handle payer audits. (Compl. ¶ 29.)

IARC further alleges that Defendants represented on numerous occasions that Medusind was timely submitting all requests for authorizations. (Compl. ¶ 30.) IARC claims these representations and warranties proved to be false, resulting in unpaid claims. (Compl. ¶ 31.) By April 2025, IARC alleges that more than $4 million in outstanding claims submitted by Medusind had not been paid, with approximately $1.7 million pending for more than 120 days. (Compl. ¶ 32.) Even accounting for audit reviews and other reasons, IARC alleges that over $2 million remained outstanding, and separately, more than $1.4 million in claims provided to Medusind had not been submitted, with dates of service as far back as August 2024. (Compl. ¶¶ 32–33.)

After IARC escalated its concerns to Medusind's ownership, Medusind's Executive Vice President Alan Morales became the primary point of contact to resolve the backlog. (Compl. ¶ 35.) In emails exchanged during April 2025, Morales allegedly represented that Medusind had increased personnel on the "charges" and "non-audit AR" team, and had "multiple persons on UR, Charges and AR," to "continue the pace." (Compl. ¶ 36.) IARC alleges these statements were false,

that it relied on them, and that no meaningful progress followed, forcing IARC to terminate Medusind and hire a different vendor to resolve the issues. (Compl. ¶ 36.)

IARC further alleges that Defendants concealed acts, such as Medusind failing to obtain medical billing authorizations. (Compl. ¶¶ 37-38.) Specifically, Medusind allegedly did not inform IARC that it failed to timely request prior authorizations and instead assured IARC that issues related to collections would be resolved. (Compl. ¶ 38.) IARC also alleges that Medusind failed to disclose significant operational and staffing changes which degraded service quality. (Compl. ¶ 39.) In particular, IARC claims that Medusind understaffed utilization review (UR) operations, used unqualified personnel and contractors, failed to train, manage, or supervise UR staff, and offshored critical UR functions to unqualified personnel in India as a cost-cutting measure. (Compl. ¶¶ 40–42.)

Based on these facts, IARC purports to assert causes of action for fraud (all Defendants) (Compl. ¶¶ 46–52); negligent misrepresentation (all Defendants) (Compl. ¶¶ 53–58); breach of express warranty for services (Medusind) (Compl. ¶¶ 59–65); DTPA violations (Medusind) (Compl. ¶¶ 66–72); breach of fiduciary duty (Medusind and AVA) (Compl. ¶¶ 73–78); and breach of contract (Medusind) based on a "valid and enforceable oral contract" (Compl. ¶¶ 79–84). IARC seeks compensatory and exemplary damages, DTPA remedies including treble damages and fees, equitable remedies including fee forfeiture and disgorgement on the fiduciary-duty claim, and contract damages and fees. (Compl. ¶¶ 52, 58, 65, 71–72, 76–78, 83–84.)

## ARGUMENT

### I.    *Legal standards*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, if true, state a plausible claim for relief; mere labels, conclusions, and formulaic recitations of the

5

elements are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). Claims sounding in fraud—including common-law fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation when grounded in the same alleged misstatements, and DTPA claims predicated on alleged misrepresentations—must satisfy Rule 9(b)'s particularity requirements, which demand the who, what, when, where, and how of the alleged fraud. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–79 (5th Cir. 1997); *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 689 (5th Cir. 2020); *ICI Constr., Inc. v. Hufcor, Inc.*, No. H-22-3347, 2023 U.S. Dist. LEXIS 37479, 2023 WL 2368677, at *41-42 (S.D. Tex. Mar. 7, 2023) (negligent misrepresentation); *DiNoto v. USAA Cas. Ins. Co.*, No. H-13-2877, 2014 U.S. Dist. LEXIS 141057, 2014 WL 4688972, at *5-6, 13 (S.D. Tex. Sept. 30, 2014) (DTPA).

## II. *Texas's independent injury/economic loss rule bars Plaintiff's noncontract claims because the alleged duties and injuries are purely contractual*

Texas law distinguishes between contractual duties voluntarily assumed and tort duties imposed by law. *See DeLanney*, 809 S.W.2d at 494. When the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the claim sounds solely in contract. *Id.* at 495 ("[Defendant's] duty to publish [Plaintiff's] advertisement arose solely from the contract. [Plaintiff's] damages, lost profits, were only for the economic loss caused by [Defendant's] failure to perform"); *Jim Walter Homes*, 711 S.W.2d at 618 ("[Plaintiff's] injury was that the house they were promised and paid for was not the house they received. This can only be characterized as a breach of contract").

The Texas Supreme Court has repeatedly held that when the only injury alleged is economic loss to the subject of a contract, tort claims are barred. *See Sharyland*, 354 S.W.3d at 418–19; *LAN/STV*, 435 S.W.3d at 235–36; *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,

6

445 S.W.3d 716, 718 (Tex. 2014) ("[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit.").

Here, every noncontract count targets the same alleged nonperformance and staffing or business decisions under the parties' services arrangement—such as failure to timely submit claims, obtain prior authorizations, staff utilization review, or adhere to an internal audit protocol—and seeks the same measure of purely economic damages, including unpaid insurance proceeds, delayed cashflow, and lost profits. (Compl. ¶¶ 14–15, 25, 32–34, 38–43, 52, 58, 65, 71–72, 76, 83–84.) This is quintessential contract territory. *See DeLanney*, 809 S.W.2d at 495; *LAN/STV*, 435 S.W.3d at 246. Plaintiff's attempt to re-label nonperformance as "misrepresentation," "concealment," or "unconscionability" does not change the nature of the duty or the injury. *See DeLanney*, 809 S.W.2d at 494–95 ("Although [Plaintiff] pleaded his action as one in negligence, he clearly sought to recover the benefit of his bargain with [Defendant]"); *Sharyland*, 354 S.W.3d at 417 (rejecting artful pleading to circumvent the economic-loss rule).

While Texas recognizes that fraudulent inducement may, in appropriate circumstances, be pursued notwithstanding the economic-loss rule, *see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998), Plaintiff has not pleaded a viable fraudulent-inducement claim (*see infra* Part III), and in all events seeks only the same benefit-of-the-bargain or economic losses to the contract's subject matter. *Id*. at 47-48; *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994). The independent-injury requirement is not met. Accordingly, the Court should dismiss the fraud, negligent misrepresentation, DTPA, express-warranty (noncontract), and fiduciary-duty claims as barred by Texas's economic-loss rule.

7

### III. The fraud-based claims fail independently for multiple reasons

#### A. <u>The alleged statements are nonactionable puffery, opinion, or promises of future performance</u>

Texas law distinguishes actionable misrepresentations of material fact from nonactionable opinion, puffery, or predictions. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995) (the statements "superb", "super fine", and "one of the finest little properties" was puffery or opinion); *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 63–65 (Tex. App.—Dallas 1990, writ denied). Statements such as "superior medical billing services," "higher collection realizations and greater efficiencies," "client-focused service," and "ensures every dollar earned reaches the client's bottom line" are classic examples of puffery and opinions about quality, superiority, and future results, not verifiable statements of existing fact. *See* Compl. ¶¶ 22(a)–(b), 28(a)–(c); *Autohaus*, 794 S.W.2d at 464 (representation that a product was the "best engineered car in the world" is nonactionable puffery); *Prudential*, 896 S.W.2d at 163 (expressions of opinion about quality are not actionable).

Furthermore, promises of future performance—such as that Medusind "would achieve" certain economic outcomes, keep "the same account managers and staff," or send a future "proposed written contract"—are not actionable absent well-pleaded facts showing the speaker's intent, at the time, not to perform. *See Formosa*, 960 S.W.2d at 48; *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337-39 (Tex. 2011). Mere failure to perform is not evidence of fraud, and this cause of action requires evidence of misrepresentation ***with intent to deceive*** and ***with intent not to perform*** at the time the promise was made. *See Formosa*, 960 S.W.2d at 48 (emphasis added). The complaint offers only hindsight nonperformance and conclusory assertions of falsity, which are insufficient.

8

Likewise, representations about how Medusind handles payer audits (as alleged in paragraph 29 of the Complaint) are at most generalized descriptions of internal procedures, not specific warranties that any particular claim would be paid or that no audit delay would occur. These statements also are not alleged with the particularity required to show falsity in context and, again, relate specifically to performance under the parties' arrangement.

B. *Fraud by nondisclosure fails because no duty to disclose is pleaded*

Nondisclosure is actionable as fraud only when there is: (1) a duty to disclose arising from a fiduciary or confidential relationship, or (2) when a defendant has partly disclosed some information that creates a duty to disclose the whole truth, or (3) when disclosure is necessary to correct a previous representation that has become misleading. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019); *Bradford v. Vento*, 48 S.W.3d 749, 755–56 (Tex. 2001).

Plaintiff's nondisclosure allegations consist of the conclusory assertion that Defendants "concealed material information" and "never told IARC" about staffing and authorization issues. *See* Compl. ¶¶ 21, 37–41, 45. However, the complaint pleads no fiduciary or confidential relationship (*see infra* Part V), no partial disclosures that triggered a duty to disclose the "whole truth," and no prior statements rendered misleading absent additional disclosure. *See Bombardier*, 572 S.W.3d at 219–20. These allegations do not state a claim for fraud by nondisclosure.

C. *Any reliance was not justifiable as a matter of law*

Both fraud and negligent misrepresentation require both actual and justifiable reliance. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). In arm's-length business settings, parties must exercise ordinary care and cannot "blindly rely" on representations

9

that are the kind of matters they can verify. *See Orca Assets*, 546 S.W.3d at 654; *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424–25 (Tex. 2015) ("[A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party."); *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 563–68 (Tex. 2019) ("a plaintiff "cannot blindly rely on the defendant's reputation, representations, or conduct where the plaintiff's knowledge, experience, and background warrant investigation."). "[W]hen a party fails to exercise such diligence, it is 'charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated.'" *Orca Assets*, 546 S.W.3d at 654 (quoting *AKB Hendrick, LLP v. Musgrave Enters.*, 380 S.W.3d 221, 232 (Tex. App. 2012)).

Here, Plaintiff is a sophisticated healthcare provider that had used third-party billing vendors for approximately fifteen years, retained the right to direct and control vendor activities, and was in a position to monitor authorizations, claim submissions, denials, and appeals. *See* Compl. ¶¶ 11, 13–16, 18, 26. The alleged misrepresentations concern vendor performance and staffing—matters within the ongoing contractual relationship that Plaintiff was uniquely able to track and verify using its own information, systems, and directives. *See* Compl. ¶¶ 32–34, 36-45. Under *Orca Assets* and *Mercedes-Benz*, reliance on generalized sales assurances or on ongoing performance statements that Plaintiff could readily verify is ***not justifiable*** as a matter of law.

    D.  <u>The fraud-sounding claims are not pleaded with Rule 9(b) particularity</u>

A claim for common law fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Rule 9(b) requires the "who, what, where, when, and how" of the alleged fraud. *See Colonial Oaks*, 972 F.3d at 689. A plaintiff must also "set forth specific facts that support an inference of fraud." *Id*.

10

Although Plaintiff identifies a June 26, 2023 meeting and attributes broad categories of statements to Ms. Abernethy (Compl. ¶ 22), it does not allege the exact words used, the context in which they were made, what was false about each, or facts supporting a contemporaneous intent not to perform. *See Williams*, 112 F.3d at 177–78. With respect to the many other alleged "representations"—such as those made "on numerous occasions" about authorizations, website marketing, or internal audit procedure—the complaint fails to identify the speaker, the time and place, the exact content, and why they were false. *See* Compl. ¶¶ 28–31.

Plaintiff's April 2025 emails from Mr. Morales are quoted more specifically (Compl. ¶ 36), but even as to those statements, the complaint alleges *only* that "IARC subsequently learned" they were false and that "no meaningful progress" occurred. Conclusory allegations of falsity and reliance do not meet Rule 9(b)'s particularity standard. *See Colonial Oaks*, 972 F.3d at 689-90. Furthermore, there are no allegations whatsoever supporting the scienter element of fraud, i.e. a "motive to commit fraud" or "circumstances that indicate [defendant's] conscious behavior." *Id*. at 689. For all of these reasons, the fraud claim fails on the pleadings, in addition to being independently barred by the economic-loss rule.

### E. *The fraud-sounding claims are duplicative of the breach of contract claim*

Under Texas Law, a claim for fraud that is duplicative of a breach of contract claim fails as a matter of law. *Fric v. Allstate Life Ins. Co.*, No. 6:21-CV-00042, 2023 U.S. Dist. LEXIS 51259, *24-25 (S.D. Tex. Mar. 26, 2023). A plaintiff cannot pursue a fraud theory if the "fraud claim is duplicative of a breach of contract claim[.]" *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 509 (Tex. App.— El Paso 2014, no pet.). Fraud and breach of contract claims are duplicative "[i]f the defendant's conduct would give rise to liability only because it breaches the parties'

11

agreement." *Id.*; *see also Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 674 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citation omitted).

In the Complaint, Plaintiff alleges the same type of legally insufficient fraud claims that the case law proscribes. Plaintiff's fraud claim alleges that Defendants made representations regarding Medusind's billing and collection services. (Compl. ¶¶ 22-36.) But these statements regarding services is the same obligation allegedly imposed by the parties' contract.

Therefore, the alleged "misrepresentations" and fraud allegations are merely Plaintiff's breach of contract allegations re-titled as fraud, and the fraud claim should be dismissed as duplicative of the breach of contract claim.

### IV. *Negligent misrepresentation is duplicative of the contract claim and otherwise fails*

Negligent misrepresentation requires that the defendant, in the course of its business, supplied false information for the guidance of others; that the defendant failed to exercise reasonable care in obtaining or communicating the information; that the plaintiff justifiably relied; and that the plaintiff suffered pecuniary loss by such reliance. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

First, as pleaded, the negligent misrepresentation count incorporates the same representations and injuries as the fraud count and the contract claim and is therefore duplicative. *See* Compl. ¶¶ 53–58, 22–36. Second, under *LAN/STV*, the claim is barred by the economic-loss rule because the alleged duty to provide "accurate" service information exists only by virtue of the services engagement, and the damages are the benefit-of-the-bargain losses to the contract's subject matter. 435 S.W.3d at 246-50. Third, any reliance is not justifiable for the reasons discussed *supra* in Part III(C). *See Orca Assets*, 546 S.W.3d at 653-54; *Mercedes-Benz*, 583 S.W.3d at 563–68.

Fourth, negligent misrepresentation is not a vehicle to enforce contractual performance standards; it addresses incorrect information supplied for guidance, not mis-performance of promised services. *See DeLanney*, 809 S.W.2d at 494–95. Here, the complaint challenges performance—such as timely submissions, authorizations, and staffing—not discrete third-party "information" provided for IARC's guidance.

Fifth and finally, because the negligent misrepresentation allegations sound in fraud and mirror the fraud allegations, Rule 9(b) applies and is not satisfied for the reasons already discussed above. *See ICI Constr.*, 2023 U.S. Dist. LEXIS 37479, at *41-43 ("When claims for fraud and negligent misrepresentation are based on the same allegations of fact, as is the case here, Rule 9(b)'s heightened pleading standard applies to claims for negligent misrepresentation as well."); *Colonial Oaks*, 972 F.3d at 689; Compl. ¶¶ 53–58, 22–36.

## V. *The breach of fiduciary duty claim fails as a matter of law*

Texas courts are reluctant to transform ordinary arm's-length business relationships into fiduciary ones. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997); *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). An informal fiduciary relationship arises only from a preexisting, special relationship of trust and confidence, not from a business contract. *See Meyer*, 167 S.W.3d at 331 ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."). Although courts "recognize that the existence of a confidential relationship is ordinarily a question of fact, when the issue is one of no evidence, it becomes a question of law." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594–95 (Tex. 1992).

Plaintiff alleges only an arm's-length services engagement and its retained right to direct and control the vendor's performance. *See* Compl. ¶¶ 18, 24–26. That does not create an informal

13

fiduciary relationship as a matter of law. *See Meyer*, 167 S.W.3d at 331; *Crim Truck*, 823 S.W.2d at 594 ("The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship"). While a formal principal–agent relationship entails fiduciary duties, the complaint's bare conclusion that IARC "authorized" AVA Billing and Medusind to act "on its behalf" is insufficient to plead an agency with fiduciary duties broader than the services contract itself, particularly where Plaintiff simultaneously alleges it retained the right to direct and control the "means and details" of the work. *See* Compl. ¶¶ 18, 24–26.

"[A] party to a contract is free to pursue its own interests, even if it results in a breach of that contract, without incurring tort liability." *Crim Truck*, 823 S.W.2d at 594. In any event, the alleged "breaches"—misrepresentations about performance and failure to disclose staffing or authorization issues—are indistinguishable from alleged contractual nonperformance and cause only economic loss to the contract's subject matter. *See* Compl. ¶¶ 73–78, 14–16, 32–34, 38–43. As discussed, those claims are barred by the independent-injury rule. *See DeLanney*, 809 S.W.2d at 494-95.

Plaintiff also seeks equitable remedies such as fee forfeiture or disgorgement (Compl. ¶ 78), which require a proven breach of fiduciary loyalty. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 872-873 (Tex. 2010) ("The main purpose of forfeiture is not to compensate an injured principal…Rather, the central purpose…is to protect relationships of trust by discouraging agents' disloyalty."). The complaint alleges no facts showing disloyal self-dealing or improper gain at IARC's expense. It alleges only staffing choices and nonperformance—matters of contract, not fiduciary loyalty.

## VI. "Breach of express warranty for services" is not a standalone tort claim and, in any event, is duplicative and inadequately pleaded

Texas law does not generally recognize broad implied warranties for services outside limited contexts, such as repair or modification of tangible goods or property. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354–55 (Tex. 1987). To the extent service providers make express affirmations that become part of the basis of the bargain, those are contractual commitments enforceable in contract (or, if applicable, under the DTPA)—not a free-standing tort claim duplicating contract remedies.

Plaintiff's "express warranty for services" count simply re-alleges that Medusind made representations about service quality and performance that "became part of the basis of the bargain" and were breached, causing the same economic loss. *See* Compl. ¶¶ 59–65. That is a contract claim by another name and should be dismissed as duplicative of the contract count. *See DeLanney*, 809 S.W.2d at 494-95; *Chapman Custom Homes*, 445 S.W.3d at 717-19. The allegations also fail to identify any definite, factual, and measurable affirmation capable of constituting an express warranty in the service context, as opposed to nonactionable puffery and opinions. *See* Compl. ¶¶ 22, 28–31; *Autohaus*, 794 S.W.2d at 463-65 ("General statements . . . are generally regarded as expressions of the seller's opinion or 'the puffing of his wares' and do not create an express warranty.").

## VII. The DTPA claim fails because it is coextensive with the contract claim, sounds in fraud without particularity, and rests on nonactionable statements

"It is the law in the State of Texas that a breach of contract does not amount to a deceptive trade practice." *Brown v. DFS Servs., L.L.C.*, 434 F. App'x 347, 353-54 (5th Cir. 2011) (citing Tex. Bus. & Comm. Code § 17.45 and citing cases). "[A]n allegation of breach of contract-without more-does not constitute a false, misleading, or deceptive action such as would violate section

15

17.46 of the DTPA," and "a simple breach of contract is not contemplated as a deceptive trade practice under the Texas DTPA . . . ." *Dura-Wood Treating Co. v. Century Forest Indus.*, 675 F.2d 745, 756 (5th Cir. 1982) (citing cases).

Plaintiff's DTPA count is premised on the same alleged misrepresentations about service quality, performance, and authorizations that underlie the contract claim and seeks only economic damages to the subject matter of the services engagement. *See* Compl. ¶¶ 66–72, 22–34, 38–43. Texas courts have long cautioned that a simple breach of contract is not a deceptive trade practice, and artful re-labeling does not convert contract nonperformance into a DTPA violation. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996) (recognizing distinction between contract breach and DTPA false, misleading, or deceptive acts); *DeLanney*, 809 S.W.2d at 494-95; *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649–50 (Tex. 1996) (DTPA requires a violation independent of contract breach). The DTPA claim should be dismissed on this basis alone.

Furthermore, the particular statements pled are nonactionable puffery or opinion, or promises of future performance for the reasons discussed *supra* Part III(A), and any nondisclosure claim fails for lack of a duty to disclose as shown *supra* Part III(B) and Part V. Likewise, because the DTPA allegations sound in misrepresentation or fraud, Rule 9(b) applies and is not satisfied. *See DiNoto*, 2014 U.S. Dist. LEXIS 141057, at *5-6. Plaintiff does not identify who at Medusind made each alleged false statement (beyond Ms. Abernethy's June 2023 meeting), when and where the statements were made, what precisely was said, or why the statements were knowingly false. *See* Compl. ¶¶ 66–72, 22–31.

16

### VIII. *Claims against the individual defendant (Abernethy) fail for the same reasons and for additional pleading deficiencies*

Texas law allows personal tort liability for one's own fraudulent statements, but Plaintiff's allegations against Ms. Abernethy are limited to generalized sales puffery—such as claims of superior services or higher collections—and future-oriented assurances, such as promises of the same staff or a to-be-provided written contract, which are nonactionable as a matter of law. *See* Compl. ¶ 22; *Autohaus*, 794 S.W.2d at 463-65; *Prudential*, 896 S.W.2d at 163-164; *Formosa*, 960 S.W.2d at 48 ("[Plaintiff] had to present evidence that [Defendant] made representations with the intent to deceive and with no intention of performing as represented").

The complaint otherwise lumps "Defendants" together without Rule 9(b) particularity as to Abernethy's specific statements, dates, and falsity beyond the June 2023 meeting, and alleges no basis for a duty by her to disclose anything to IARC. *See* Compl. ¶¶ 21, 22, 28–31, 37–41, 45; *Williams*, 112 F.3d at 177–79; *Bombardier*, 572 S.W.3d at 219–20. The claims against Ms. Abernethy in her individual capacity therefore should be dismissed in their entirety.

### IX. *Alternatively, scandalous and immaterial allegations should be stricken*

Allegations about a 2012 Alabama verdict against a different entity ("Medusind Solutions, Inc.") concerning a medical transcription error (Compl. ¶¶ 43–44) are immaterial and scandalous. They have no bearing on whether Defendants breached a 2023–2025 Texas billing-services engagement or committed fraud in this case. To the extent not otherwise dismissed, the Court should strike these paragraphs under Rule 12(f) to avoid unfair prejudice and jury confusion.

### **CONCLUSION**

Texas law confines Plaintiff to its benefit-of-the-bargain remedies in contract for alleged nonperformance of a billing-services engagement and the purely economic losses to the subject of that contract. The fraud, negligent misrepresentation, DTPA, express-warranty (as a freestanding

17

claim), and fiduciary-duty counts impermissibly duplicate the contract theory and fail independently on their elements and pleading. Defendants respectfully request that the Court dismiss with prejudice Plaintiff's claims for fraud (Count A), negligent misrepresentation (Count B), breach of express warranty for services as a noncontract claim (Count C), DTPA (Count D), and breach of fiduciary duty (Count E); strike paragraphs 43–44 as immaterial and scandalous; and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: s/ Andrew S. Holland
Andrew S. Holland
TX Bar No. 24134330
909 Fannin Street, Suite 3300
Houston, Texas 77010
713.353.2000
713.785.7780 (Fax)
andrew.holland@wilsonelser.com

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Plaintiff's counsel via virtual conference, regarding the relief requested in this Motion and Plaintiff's counsel indicated that Plaintiff was opposed to the relief sought.

By: */s/ Andrew Holland*
Andrew Holland

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served on all counsel in accordance with the Federal Rules of Civil Procedure via the Court's CM/ECF system and/or email on this 27th day of October, 2025.

By: */s/ Andrew Holland*
Andrew Holland