UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| I.A.R.C. INC. D/B/A INTO ACTION RECOVERY CENTERS INC.<br><br>    Plaintiff,<br><br>v.<br><br><br>MEDUSIND INC., AVA BILLING AND CONSULTING, LLC, AND ASHTON ABERNETHY<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO. 4:25-cv-04638<br>JURY |

**PLAINTIFF I.A.R.C. INC.'S RESPONSE TO DEFENDANTS'
PARTIAL MOTION TO DISMISS**

### I.  FACTUAL BACKGROUND

Plaintiff I.A.R.C, Inc. ("IARC") is a behavioral healthcare provider. (Compl., Dkt. No. 1 ¶ 11.) IARC is a small business that operates treatment facilities for individuals with drug and alcohol addiction in Houston, Texas. (*Id.*) The fraud and deception committed by Defendants who were IARC's former billing service providers caused IARC millions of dollars in damages.

In 2021, IARC entered into a Billing Services Agreement with non-party LST. (*Id.* ¶ 16.) After IARC and LST entered into the Billing Services Agreement, LST's affiliate, AVA Billing, began providing the billing services and continued to do so until 2023, when Medusind acquired AVA Billing from LST. (*Id.* ¶¶ 18, 20, 23-25.) However, IARC never provided written consent to any assignment of the Billing Services Agreement to AVA Billing or Medusind, as expressly required by the Billing Services Agreement's anti-assignment clause. (*Id.* ¶¶ 17, 19, 27.)

To induce IARC to enter into an oral contract with Medusind, Defendants knowingly misrepresented and concealed material facts they were obligated to disclose as agents and

1

fiduciaries of IARC. (*Id.* ¶ 21-23, 28, 80.)[1] For example, Abernethy, a representative of both Medusind and AVA Billing—who had special knowledge of Medusind's operations and business plans—told the following lies to IARC to line her own pockets:

1) Medusind provided superior medical billing services to customers than AVA Billing provided IARC, and would provide those superior services to IARC;

2) Medusind achieved higher collection realizations and greater efficiencies on behalf of clients, and would achieve those higher realizations and greater efficiencies for IARC;

3) the day-to-day functions regarding billing and collection services would not change and the same account managers and staff who were responsible for IARC's account at AVA Billing would remain on IARC's account with Medusind;

4) neither AVA Billing nor Medusind had ever lost any clients; and

5) Abernethy would provide IARC a proposed written contract to formalize the parties' oral agreements regarding Medusind's billing services.

(*Id.* ¶ 22.) Thereafter, Defendants continued to misrepresent and conceal material facts from IARC in an effort to hide the substantial damages they were causing, including over $4 million in outstanding unpaid claims. (*Id.* ¶¶ 28-45.) But for these misrepresentations and concealments, IARC would have never agreed to use Medusind, nor would IARC have continued using Medusind for as long as it did. (*Id.* ¶ 45.)

## II.   ARGUMENT AND AUTHORITIES

**A.   Dismissal based on the economic loss doctrine is improper because IARC's non-contractual claims arise from non-contractual duties.**

Invoking the economic loss doctrine, Defendants improperly seek dismissal of Plaintiff's

---

[1] Defendants' Motion incorrectly suggests that IARC pleaded both that the Billing Services Agreement with LST remains operative, and that the Billing Services Agreement was assignable to AVA Billing. (Mot., Dkt. No. 14 n.2).

non-contractual claims by asserting that the Medusind contract alone gives rise to the duties and injuries at issue. But Defendants' argument is flawed because it fails to acknowledge the proper scope and limitations of Texas's economic loss doctrine. Texas law recognizes that a contractual relationship may give rise to duties imposed by tort law. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986.) Thus, the economic loss rule does not bar all tort claims arising out of a contractual setting. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co*., 445 S.W.3d 716, 718 (Tex. 2014.) A party states a viable tort claim when the duty breached exists independently of the contract, and the resulting harm is not merely the economic loss of a contractual benefit. *Chapman* 445 S.W.3d at 718.[2] Moreover, tort damages are recoverable for fraudulent inducement even if the plaintiff only suffers an economic loss related to the contract. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 47 (Tex. 1998.)

IARC's non-contractual claims and injuries arise from duties that are independent of the Medusind contract, including the duty not to fraudulently induce another to enter into a contract. Thus, the economic loss rule does not bar any of IARC's claims.

1. **IARC's fiduciary duty and fraudulent nondisclosure claims are adequately pleaded and should not be dismissed under the economic loss doctrine.**

Defendants seek to dismiss IARC's fiduciary duty and fraudulent nondisclosure claims because they incorrectly contend that: (1) IARC did not plead a duty to disclose; (2) IARC did not plead a fiduciary or agency relationship; and (3) the economic loss rule bars fiduciary duty and fraudulent nondisclosure claims. (Mot., Dkt. No. 14 at 9, 13, and 7.) Because these arguments relate to the parties' fiduciary relationship, IARC addresses them together.

---

[2] The Texas Supreme Court has emphasized that a party cannot "avoid tort liability to the world simply by entering into a contract with one party [otherwise the] economic loss rule [would] swallow all claims between contractual and commercial strangers." *Chapman* 445 S.W.3d at 718.

Defendants argue that IARC's fiduciary duty claim fails because Defendants' misconduct amounts to contractual nonperformance related to a purported arm's length business transaction. But this argument simply ignores both the specific facts pleaded and well-settled law that a principal-agent relationship gives rise to fiduciary duties independent of any contract.

When a person or company delegates the authority to act on its behalf to another party but retains the right to direct and control the means and details of the activities, it creates an agency relationship. *Matter of Carolin Paxson Advert., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991); *Johnson v. Owens*, 629 S.W.2d 873, 875 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) IARC sufficiently pleaded a principal/agent relationship. IARC alleges that it separately authorized AVA Billing and Medusind to act on its behalf with respect to various services, and that IARC retained the right to direct and control the means and details of AVA Billing's and Medusind's billing activities. (Compl., Dkt. No. 1 ¶¶ 18, 24-26, 73-74.) Thus, an agency relationship was properly pleaded.

Under Texas law, an agent owes its principal the duty of full disclosure. *See Johnson v. Brewer & Pritchard*, 73 S.W. 3d 193, 200 (Tex. 2002) (agency gives rise to fiduciary duty); *Jordan v. Lyles*, 455 S.W.3d 785, 792 (Tex. App.–Tyler 2015, no pet.) (agent owes fiduciary duty of full disclosure); *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 695 (S.D. Tex. 2010) (fiduciary relationship creates duty to fully disclose.) Accordingly, IARC has sufficiently pleaded a fiduciary relationship that Defendants owed to IARC, giving rise to a duty to disclose.

Defendants also owed an independent duty of full disclosure based on their partial and misleading representations. An independent duty to disclose the whole truth arises when a defendant's partial disclosure created a false impression. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019). IARC has properly alleged such a duty of disclosure here. For example, Defendants made affirmative representations regarding prior

authorizations, adequate staffing, and resolving backlogs, while concealing facts that directly contradicted those statements, including Medusind's history of offshoring UR functions to unqualified staff, and the fatal loss of a client due to its negligent staffing. (Compl., Dkt. No. 1 ¶¶ 30, 35-44.)

Additionally, the economic loss rule does not bar IARC's breach of fiduciary duty and fraudulent nondisclosure claims. The Texas Supreme Court has expressly recognized that the economic loss rule does not preclude breach of fiduciary duty claims for economic losses. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417-19 (Tex. 2011.); *see also James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce, N.A., Inc.*, 403 S.W.3d 360, 366 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that economic loss rule does not preclude breach of fiduciary duty claim where the fiduciary duty breached between the agent and principal arose independent of the contract.) As one federal court in the Fifth Circuit acknowledged: "[t]he Texas Supreme Court recognizes that certain professional duties have developed in the common law independent of contracts, and thus generally fall outside the [economic loss] rule." *Bates Energy Oil & Gas v. Complete Oilfield Services*, 361 F. Supp. 3d 633, 658 (W.D. Tex. 2019.)

Moreover, the fiduciary duties, breaches, and injuries in question do not arise exclusively from the contract between IARC and Medusind. Unlike the opinions cited in Defendants' Motion regarding the economic loss rule, the relationship of the parties in this case is unique and distinguishable. The Complaint alleges that IARC had separate agency and fiduciary relationships with AVA Billing and Medusind, and that IARC did not consent to any assignment of the Billing Services Agreement to Medusind (Compl., Dkt. No. 1 ¶¶ 18, 19, 24-28.) In addition, the Complaint alleges that Abernethy, AVA Billing's founder and co-owner and Medusind's Vice President,

misrepresented and fraudulently concealed material facts to induce IARC to enter into a contract with Medusind, in furtherance of her own personal financial interests. (*Id*. ¶ 22.)

Defendants incorrectly assert that the alleged misrepresentations about performance and failure to disclose staffing or authorization issues are indistinguishable from Medusind's contractual nonperformance. Defendants' arguments ignore both Texas law and the actual allegations asserted by IARC. While acting on behalf of both AVA Billing and Medusind, Abernethy fraudulently misrepresented and concealed material facts in June 2023 before Medusind provided any services and before a contractual relationship with Medusind was formed. (*Id*. ¶¶ 22, 23.) The fiduciary duties, breaches, and injuries related to those false statements and fraudulent concealment do not arise exclusively from the Medusind contract. Consequently, the economic loss rule does not preclude IARC's fiduciary duty claims or fraudulent nondisclosure claims.

**2. The economic loss rule does not bar IARC's fraud claims.**

Defendants argue that IARC's fraud claims are duplicative of its contract claim and therefore are barred by the economic loss rule. Defendants' argument, however, is contrary to well-established Texas law. The Texas Supreme Court has held that the economic loss rule does not apply to intentional torts, such as fraud, fraudulent inducement, and fraud by nondisclosure, because the duty to abstain from fraud is "separate and independent from the duties established by the contract itself." *Formosa Plastics,* 960 S.W.2d at 46.

In *Formosa Plastics*, the Texas Supreme Court rejected the application of the economic loss rule to fraud claims, even where the claimant suffered only economic losses related to the subject matter of the contract. *Id*. Texas law "has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations," and "the legal duty not to fraudulently procure a contract is separate and independent from the duties established

6

by the contract itself." *Id*. The Court further held that "[t]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id*. at 47. The Texas Supreme Court reaffirmed this principle in *Sharyland*, emphasizing that the economic loss rule is not a blanket bar for all torts, and that pure economic loss is recoverable for intentional torts including fraud and fraudulent inducement. *Sharyland* 354 S.W.3d at 417-419.

Federal courts applying Texas law have reached the same conclusion. In *Eastman Chem. Co. v. Niro, Inc.*, a Southern District of Texas court held that the economic loss rule did not bar plaintiff's fraud claims – even those arising after formation of the contract – because the defendant owed an independent legal duty not to commit fraud. *Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 717 (S.D. Tex. 2000.) Likewise, in *Bustos v. Invierte En Tex., LLC*, the court held that plaintiff's fraud and fraudulent inducement claims were not barred by the economic loss rule because "the economic loss rule only applies to unintentional torts" and "fraud is an intentional tort [to which] the economic loss rule does not apply." *Bustos v. Invierte En Tex., LLC*, No. 4:22-CV-02690, 2023 WL 5487672, at *6 (S.D. Tex. Aug. 9, 2023), report and recommendation adopted, No. 4:22-CV-2690, 2023 WL 5489048 (S.D. Tex. Aug. 24, 2023); *see also Experian Info. Sols., Inc. v. Lexington Allen L.P.,* No. 4:10-CV-144, 2011 WL 1627115, at *12 (E.D. Tex. Apr. 7, 2011) (economic loss rule did not apply to fraud claims.)

Here, IARC alleges fraud based on common law duties independent of any contractual duties. IARC alleges that, to induce IARC to hire Medusind, Defendants knowingly and intentionally misrepresented Medusind's historical performance and operational capabilities as a billing service provider as well as its staffing practices and prior authorization practices. (Compl.,

Dkt. No. 1 ¶¶ 21-31, 49, 50, 70, 71, 77.) IARC further alleges that Abernethy induced IARC to work with Medusind by falsely promising to provide a proposed written contract with no intention of doing so, because she was afraid she would lose a major customer account which would have adversely impacted her personal financial interests. (*Id*. ¶ 21, n.2.)

IARC further alleges that Defendants concealed material facts to induce IARC to proceed with Medusind, including Medusind's history of staffing UR operations with unqualified employees and contractors; its history of failing to adequately train, manage, and supervise UR staff; and its history of offshoring work to unqualified personnel located in India. (*Id*. ¶¶ 21, 41-45.) IARC also alleges Defendants later concealed material facts including staffing reductions, outsourcing work to unqualified personnel overseas, failure to obtain prior authorizations, and lack of resources to address backlog, while continuing to provide false assurances to IARC. (*Id*. ¶¶ 35-45.) The duty not to intentionally misrepresent or conceal material facts exists independently from any contractual duty. And because Texas law permits tort recovery for economic losses caused by fraud, IARC's damages are not barred simply because the damages relate to the Medusind contract's subject matter. Accordingly, the economic loss rule does not apply, and Defendants' motion to dismiss the fraud claims should be denied.

**3. The economic loss rule does not bar IARC's negligent misrepresentation claim.**

A negligent misrepresentation claim is not barred simply because a contractual relationship exists between the parties. *Tex. Drain Techs., Inc. v. Centennial Contractors Enterprises, Inc*., No. CIV.A. H-14-3298, 2015 WL 4094059, at *3 (S.D. Tex. July 7, 2015.) The question is whether the plaintiff alleges: (1) a duty independent of the contract and (2) reliance-based damages rather than contractual expectancy damages. *Id*. at *2 (citing *Chapman,* 445 S.W.3d at 718.)

8

Texas law recognizes a duty to avoid supplying false information and to correct one's own false statements. *Id*. at *3 ("While a duty of care when supplying commercial information is normally limited to those in positions of trust, a duty always exists to correct false representations."); *see also Jetpay Merchant Servs., LLC v. Miller,* 2007 WL 2701636, at *5 (N.D. Tex. Sept. 17, 2007) (under a negligent misrepresentation claim, "[e]ven without a special relationship, there is always a duty to correct one's own prior false or misleading statement."); *see also Shell Oil Prods. Co. v. Main St. Ventures, L.L.C.,* 90 S.W.3d 375, 381 (Tex. App.—Dallas 2002 pet. dism'd by agrmt.) (claims for negligent misrepresentation were independent of contract when statements concerned the level of commitment and ability to move forward with a project.)

Here, IARC alleges that Defendants were agents and made false representations and assurances to IARC regarding staffing, utilization management services, billing practices, and purported remediation efforts despite knowing those statements were false. (Compl., Dkt. No. 1 ¶¶ 21-22, 28-31, 36-45, 53-58.) Defendants had an independent duty to correct the false and misleading statements and failed to do so. Thus, the allegations satisfy the independent duty requirement.

The next issue is whether IARC's requested relief includes reliance-based damages recoverable in tort. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991.) Under Texas law, a plaintiff asserting a negligent misrepresentation claim may recover pecuniary loss suffered as a consequence of their reliance upon the misrepresentation, and such reliance damages are "distinct, separate, and independent" from contractual damages. *Id*. (citing Restatement (Second) of Torts § 552(1) (1977)); *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797-798 (Tex. App.—Houston [1st Dist.] 2007, pet. denied.)

Here, IARC alleges it incurred out-of-pocket costs and consequential damages, including costs associated with retaining another third-party billing and collections service provider to mitigate the harms caused by Defendants' actions. (Compl., Dkt. No. 1 ¶¶ 36, 45, 58.) These damages are independent of any contractual benefit-of-the-bargain damages. *Sterling*, 259 S.W.3d at 797-798.

But even assuming *en arguendo* that some overlap in contract and tort damages exists, dismissal would still be improper. Plaintiffs are allowed to plead alternative and even inconsistent theories of recovery. Fed. R. Civ. P. 8(a)(3), (d)(2)-(3.) While a plaintiff may not always *recover* for both breach of contract and negligent misrepresentation, a plaintiff is still entitled to *plead* both causes of action. Fed. R. Civ. P. 8(d)(3) (permitting a party to "state as many separate claims or defenses as it has, regardless of consistency.") *See Occidental Petro. Corp. v. Wells Fargo Bank, N.A.*, 573 F.Supp.3d 1161, 1171 (S.D. Tex. 2021) (rejecting argument that the economic loss rule bars claims for alternative theories of relief where a contract existed, noting that the plaintiff "is entitled to plead alternative theories of relief, and will face the economic loss rule if and when [it] recovers, depending on the basis of recovery."); *see also Hybrid Energy Servs., Ltd. v. Magness Oilfield Brokerage, LLC,* 2016 WL 11673473, at *3 (N.D. Tex. Aug. 5, 2016) (denying defendant's motion to dismiss a negligence claim under the economic-loss rule, finding "[d]ismissal on this ground is inappropriate at this stage of the litigation.") Accordingly, the Court should deny Defendants' motion to dismiss IARC's negligent misrepresentation claim.

**4. The economic loss rule does not bar IARC's DTPA claim.**

The DTPA imposes independent statutory duties that exist irrespective of any contractual relationship, including an obligation to refrain from engaging in false, misleading, or deceptive acts under Tex Bus. & Com. Code § 17.46(b.) The Fifth Circuit has held that "if a particular duty

is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015.) Texas courts also hold that misrepresentations, nondisclosures, and deceptive conduct – even when related to a contract – are actionable under the DTPA. *See Balay v. Gamble,* No. 01-10-00017-CV, 2011 WL 2435929, at *4 (Tex. App. – Houston [1st Dist.] June 16, 2011, no pet.); *see also Howell Crude Oil Co. v. Donna Ref. Partners, Ltd*., 928 S.W.2d 100, 109 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("[t]he duty not to make misrepresentations or to make certain disclosures during the contract formation stage is imposed by law independent of a contract and thus, is actionable under the DTPA.") IARC has alleged misrepresentations which constitute statutory violations under the DTPA that go beyond a mere failure to perform contractual obligations. (*See, e.g.*, Compl., Dkt. No. 1 ¶¶ 21–31, 35–45, 66–72.) Thus, the economic loss rule does not bar IARC's DTPA claim.

### 5. IARC's breach of express warranty of services claim is not duplicative of its breach of contract claim.

A claim for breach of warranty is distinct from a claim for breach of contract, and the two may be pleaded at the same time. *Med. City Dallas, Ltd. v. Carlisle Corp*., 251 S.W.3d 55, 60 (Tex.2008.) Federal courts applying Texas law have reaffirmed this distinction. In *Barge v. Wells Fargo Bank, N.A.*, the court dismissed the plaintiffs' contract claims but allowed their express warranty claim to proceed, finding that Wells Fargo had made specific representations, via its website, sufficient to constitute express warranties. *Barge v. Wells Fargo Bank, N.A.*, No. 1:23-CV-00189, 2025 WL 1242327, at *5, n.3 (E.D. Tex. Feb. 25, 2025.) In *Barge*, the court held that failure to honor to those representations under a warranty constituted a separate duty, and noted that the plaintiffs' separate non-economic and punitive damages were "different from the economic loss of a contractual benefit." *Id*. "Because Wells Fargo had an independent duty

11

separate from the contractual undertaking and they allege non-economic damages, the economic loss rule does not preclude recovery in tort for economic losses." *Id*.

The same reasoning applies here. IARC alleges that Defendants made affirmative representations and warranties about the quality, characteristics, and capabilities of Medusind's services, which became part of the basis of the bargain and formed actionable express warranties. (Compl., Dkt. No. 1 ¶ 59-65.) These include representations that Medusind's expertise and operational capabilities would improve IARC's efficiency and profitability, that client satisfaction was its primary focus, and that every dollar earned would reach the client's bottom line. (*Id*. ¶ 28.) Medusind also made specific representations and warranties regarding its payor audit procedures. (*Id*. ¶ 29.) These express warranties exist independently of any contract and Medusind's failure to honor them supports a standalone warranty claim, regardless of whether the same conduct also breached the Medusind contract. Accordingly, the express warranty claim should not be dismissed.

**B.     IARC's fraud allegations satisfy Rule 9(b.)**

Defendants argue that IARC's fraud claims, and by extension its negligent misrepresentation and DTPA claims, fail to satisfy the heightened pleading requirements of Rule 9(b). Defendants' argument is meritless. Rule 9(b) requires that a party "alleging fraud or mistake…must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). At minimum, the Rule requires a plaintiff to plead the "who, what, where, when, and how of the alleged fraud," but the allegations "must still be as short, plain, simple, direct, and concise as is reasonable under the circumstances." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Development, Inc.*, 972 F.3d 684, 689 (5th Cir. 2020); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998.)

Here, IARC's Complaint satisfies the requirements of Rule 9(b). IARC specifically pleaded **who** made the misrepresentations: Ashton Abernethy and Alan Morales. (Compl., Dkt. No. 1 ¶¶ 21-22, 35-36.) IARC pleaded **what** was misrepresented and fraudulently concealed: (1) assurances that Medusind historically provided, and would provide, superior billing services; (2) assurances that Medusind historically achieved, and would achieve, higher collection realization due to Medusind's alleged expertise and insurer relationships; (3) assurances that the same account managers and staff would remain on IARC's account; (4) assurances that IARC would be provided a proposed written contract; (5) concealment of Medusind's historical track record of offshoring UR services to unqualified and poorly trained personnel and its offshoring of those services in this case; (6) concealment of Medusind's implementation of significant changes to its operations and staffing for IARC's account, including without limitation cutting UR staff and reassigning critical UR functions from domestic employees to unqualified personnel located in India; (7) representations that prior authorizations were being timely submitted; and (8) representations that additional staff had been allocated to resolve backlog. (*Id*. ¶¶ 21-22, 35-36, 39-44.) IARC pleaded **when and where** the misrepresentations were made. For example: (1) during a June 26, 2023 in-person meeting at IARC's Houston office; and (2) in April 2025 email communications with Alan Morales. (*Id*. ¶¶ 22, 28-29, 36.) And IARC pleaded **how** the representations were false: (1) IARC was never provided a proposed written contract by Defendants; (2) prior authorizations were not timely obtained or submitted, leading to denied claims; (3) Medusind made undisclosed staffing changes and cuts in cost-cutting measures, both before and after IARC was induced to work with Medusind; (4) key functions were outsourced to unqualified personnel overseas, both before and after IARC was induced to work with Medusind; (4) UR services were not being performed as

13

represented, both before and after IARC was induced to work with Medusind; and (5) the backlog remained unresolved despite repeated assurances to the contrary. (*Id*. ¶¶ 37-45.)

Defendants' insistence that IARC must plead the "exact words" or "exact content" of every misrepresentation is legally unfounded. Courts have rejected such rigid interpretations of Rule 9(b). *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009.) Moreover, Defendants' scienter argument fails because Rule 9(b) only requires scienter to be "alleged generally." Fed. R. Civ. P. 9(b). IARC has met this standard by alleging a pattern of misrepresentations and concealments intended to induce and retain IARC's business, and such facts support a reasonable inference of fraudulent intent.

Finally, because the fraud claims satisfy Rule 9(b)'s heightened pleading standard, IARC has likewise satisfied Rule 9(b) for its negligent misrepresentation and DTPA claims to the extent Defendants contend those claims "sound in fraud." Accordingly, Defendants' Rule 9(b) challenges should be denied.

C.   **Defendants' misrepresentations are actionable.**

As discussed above, IARC alleges specific, verifiable misrepresentations regarding existing facts that are actionable under Texas law. Accordingly, the Court should reject Defendants' argument that the statements are non-actionable puffery or opinion.

Statements are non-actionable puffery when they are "of the vague and optimistic type... and contain no concrete factual or material misrepresentation." *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Entm't Corp.,* 58 F.4th 195, 220 (5th Cir. 2023) (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,* 365 F.3d 353, 372 (5th Cir. 2004).) That is not the case here. Defendants' representations, both before and after the Medusind oral contract was formed, go beyond generalized claims of superiority, and are instead specific, verifiable statements of Medusind's

14

existing operations, performance capabilities, staffing conditions, client history, and present intent to perform. For example, Abernethy's misrepresentations included a direct comparison of the historical billing realization rates achieved by Medusind and AVA Billing and the assertion that Defendants had never lost a client. (Compl., Dkt. No. 1 ¶ 22(b).) Such statements are not subjective opinions, but rather involve concrete matters that can be proven objectively true or false.

IARC also alleges that Abernethy had special knowledge when she made some of the misrepresentations in question. (*Id*. ¶ at 22.) Texas law recognizes that the distinction between a fact and an opinion "often depends on the circumstances in which a statement is made," and "special or one-sided knowledge" may render a statement factual rather than opinion based. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am*., 341 S.W.3d 323, 338 (Tex. 2011.) Even if an expression is an opinion, "[t]here are exceptions to [the] general rule that an expression of an opinion cannot support an action for fraud." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983.) "An opinion may constitute fraud if the speaker has knowledge of its falsity." *Id*. Further, "when an opinion is based on past or present facts .... special knowledge establishes a basis for fraud." *Italian Cowboy*, 341 S.W.3d at 338 (quoting *Trenholm*, 646 S.W. 2d at 930.) Even more, "expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future." *Trenholm*, 646 S.W. 2d at 930. Thus, even representations framed as forward-looking promises become actionable where, as here, the speaker possesses inside information contradicting those representations.

Here, Abernethy's pre-contract representations are not opinions, but statements of present fact and present intent that were verifiably false when made. She represented that: (1) Medusind provided, and would provide, superior medical billing services than AVA Billing; (2) Medusind

15

achieved, and would achieve for IARC, higher collections realizations because of its existing market presence and insurer relationships; (3) the same account managers and staff would remain assigned to IARC's account; (4) neither AVA Billing nor Medusind had ever lost any clients; and that (5) she would provide a proposed written contract reflecting the parties' oral agreement. (Compl., Dkt. No. 1 ¶ 22.)

These representations concern Medusind's existing operations, staffing levels, resource allocation, client retention history, and present intent to honor the agreement – all matters within Abernethy's exclusive and superior knowledge as Medusind's Vice President of Sales and founder of AVA Billing. She was uniquely positioned to know the truth regarding Medusind's staffing instability and planned reductions, outsourcing practices, deficiencies in UR and prior authorization practices, prior client losses, and operational shortcomings. Because Ms. Abernethy possessed, and concealed, special knowledge that directly contradicted her statements, those statements fall squarely within the recognized exceptions that render them actionable under *Trenholm* and *Italian Cowboy*.

Defendants also made numerous actionable misrepresentations during the parties' performance of the contract. IARC alleges that Defendants falsely represented that: (1) Medusind was timely obtaining and submitting prior authorizations; (2) Medusind was keeping the same account managers and staff on IARC's account; (3) Medusind had already increased and assigned additional staff to address outstanding backlogs; and (4) that utilization review services were being properly performed. (Compl., Dkt. No. 1 ¶¶ 21-22, 30, 35-42.) Again, each of these statements are specific factual representations about Medusind's then-existing operations and current remedial efforts, not puffery, opinions, or mere promises of future performance. Thus, Defendants' misrepresentations are actionable, and their argument for dismissal must be denied.

16

**D.     Justifiable reliance is a fact issue that cannot be resolved on a Rule 12(b)(6) motion.**

Defendants argue that the fraud and negligent misrepresentation claims should be dismissed because IARC could not have justifiably relied on Defendants' representations as a matter of law. But this argument improperly attempts to resolve factual issues that cannot be decided on a Rule 12(b)(6) motion.

 "[T]he issue of justifiable reliance is generally a question of fact." *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 811 (5th Cir. 2017) (quoting *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 584) (Tex. App.—San Antonio 2011, no pet.) At the pleading stage, IARC need only allege – *not prove* – that it justifiably relied on Defendants' misrepresentations, which it has done. (Compl., Dkt. No. 1 ¶ 57.) Whether the reliance was justified requires a factual inquiry that cannot be resolved on a motion to dismiss. Thus, Defendants' reliance argument should be rejected.

**E.     The claims against Abernethy are properly pleaded and should not be dismissed.**

IARC adequately pleaded its fraud and negligent misrepresentation claims against Abernethy. Under Texas law, corporate agents are "personally liable for [their] own fraudulent or tortious acts" "even though they were acting on behalf of the corporation. *Keyes v. Weller*, 692 S.W.3d 274, 279 (Tex. 2024.) As detailed in Section II.B above, the allegations satisfy Rule 9(b)'s particularity requirement by identifying the who, what, when, where, and how of Abernethy's alleged fraud and misrepresentations, including her June 26, 2023 statements concerning Medusind's billing services capabilities, staffing levels, and operational functions. (Compl., Dkt. No. 1 ¶ 21-22.) These statements were actionable representations of existing fact, not puffery or future promises. Furthermore, her representations regarding Medusind's services triggered a duty to disclose the whole truth regarding Medusind's deficiencies, as explained in Section II.A(1)

above. IARC incorporates by reference its prior arguments establishing the sufficiency of its fraud and negligent misrepresentations claims against all the Defendants, which apply equally to Abernethy. Accordingly, the claims against Abernethy should proceed.

**F.    Defendants' request to strike or dismiss the Alabama verdict allegations is improper.**

Defendants' request to dismiss or strike paragraphs 43-44 of the Complaint fails for two reasons. First, a motion under Rule 12(b)(6) challenges the legal sufficiency of the claims, not the factual allegations themselves. Rule 12(b)(6) permits dismissal of an entire claim, but it does not provide a basis to dismiss individual factual allegations that provide background or context. The paragraphs at issue relate to Defendants' misrepresentations and concealment; they also provide context regarding Medusind's practices, operational failures, and history. Furthermore, to the extent Defendants are seeking Rule 12(f) relief under the guise of a Rule 12(b)(6) motion, such a request should be denied. Motions to strike are not a substitute for motions to dismiss; thus, the Alabama verdict allegations in paragraphs 43-44 of the Complaint should not be stricken.

### III.    CONCLUSION

FOR THESE REASONS, dismissal is unwarranted and, at minimum, leave to amend must be granted. Plaintiff IARC respectfully requests that the Court deny Defendant' Partial Motion to Dismiss, and for such other and further relief to which it may be justly entitled.

Dated: December 5, 2025

                                      Respectfully submitted,

                                      **SPENCER FANE LLP**

By:    ***/s/ Brian W. Zimmerman***
          Brian W. Zimmerman
          bzimmerman@spencerfane.com
          SBOT No. 00788746/FBN: 18979
          Matt R. Raley
          mraley@spencerfane.com
          SBOT No. 240512224/FBN 616398

3040 Post Oak Blvd., Suite 1400
Houston, TX 77056
Telephone: 713-552-1234
Facsimile: 713-963-0859

**ATTORNEYS FOR PLAINTIFF I.A.R.C. INC. D/B/A INTO ACTION RECOVERY CENTERS, INC.**

## CERTIFICATE OF SERVICE

I certify that on December 5, 2025, a true and correct copy of this document was served in accordance with Rule 5 of the Federal Rules of Civil Procedure on all counsel of record.

*/s/ Brian W. Zimmerman*
Brian W. Zimmerman